FILED
CLERK

12:34 pm, May 07, 2018

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------X

AUGUSTO FERNANDES, MARIA
FERNANDES, ACF FAMILY HOLDING
CORP, ETECA HOLDING INC. and JCA
VENTURE HOLDING CORP,

                  Plaintiffs,

             -against-

DAVID MORAN, Individually, and FRANK
RIGNOLA, Individually,

                 Defendants.

----------------------------------------------------------X

**MEMORANDUM OF
DECISION & ORDER**
2:17-cv-03430 (ADS)(SIL)

**APPEARANCES:**

**The Coalition of Landlords, Homeowners & Merchants, Inc.**
*Counsel for the Plaintiffs*
28 East Main Street
Babylon, NY 11702
        By:    Michael Cullen, Esq., Of Counsel

**Morris, Duffy, Alonso & Faley**
*Counsel for the Defendants*
2 Rector Street
New York, NY 10006
        By:    Kenneth E. Pitcoff, Esq., Of Counsel

**SPATT, District Judge**:

On June 7, 2017, Augusto Fernandes, Maria Fernandes (together, the "Fernandes's"), ACF

Family Holding Corp ("ACF"), Eteca Holding Inc. ("Eteca") and JCA Venture Holding Corp

("JCA") (together, the "Corporate Plaintiffs") (all together, the "Plaintiffs"), commenced this

action in this Court by notice of removal against two employees of the Town of Brookhaven, David

Moran ("Moran"), and Frank Rignola ("Rignola") (together, the "Defendants") in their individual

capacity. The Plaintiffs alleges causes of action under 42 U.S.C. §§ 1983, 1985, as well as state-law claims of breach of contract, tortious interference with contract, fraud in the inducement, abuse of process, *prima facie* tort, breach of the implied covenant of good faith, and violations of Judiciary Law § 487.

Presently before the Court is the Defendants' motion to dismiss, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(6), seeking to dismiss the complaint for failure to state a claim upon which relief may be granted.

For the following reasons, the Defendants' motion to dismiss is granted in its entirety.

# I. BACKGROUND

## A. THE FACTUAL BACKGROUND

Unless otherwise noted, the following facts are drawn from the Plaintiffs' relatively short, bare-bones complaint, and for the purposes of the instant motion, they are construed in favor of the Plaintiff.

At all times relevant to this case, Rignola served as a Town Inspector of the Town of Brookhaven and Moran was a Assistant Town Attorney of the Town of Brookhaven.

The Corporate Plaintiffs owned the three properties at issue in this case: 73 Jamaica Avenue, Holtsville, NY, 43 Pinedale Avenue, Farmingville, NY and 66 Abner Drive, Farmingville, NY (the "Properties").

Prior to March of 2016, Inspector Rignola issued a series of Town Code violations as to the Properties. The Complaint does not specify any details as to the identity or nature of the alleged violations. At some further point, also prior to March of 2016, the Town of Brookhaven filed charges against the Corporate Plaintiffs based on the above-mentioned Town Code violations in the Suffolk County Sixth District Court. A judgment of $53,000 in fines was issued against the

Corporate Plaintiffs. However, the Town of Brookhaven and the Corporate Plaintiffs entered into a court ordered agreement to sign satisfactions of judgment for the balance of the $53,000 in fines in return for a $6,000 payment with proof of receipt from the Corporate Plaintiffs. The Town of Brookhaven was represented in this negotiation by Moran in his capacity as Assistant Town Attorney.

The Plaintiffs allege that the Corporate Plaintiffs paid the $6,000 fine and signed a contract with a prospective buyer for the property located at 43 Pinedale Avenue, Farmingville, NY. With a judgment lien remaining against the Properties, the Corporate Plaintiffs could not close on the sale.

In March 2016, Larry Davis, an attorney for the Corporate Plaintiffs presented a receipt to the Town of Brookhaven for the payment of the $6,000. According to the complaint, Davis met with Moran and Rignola. The Plaintiffs allege that Moran refused to sign satisfactions of judgment on the Town of Brookhaven's behalf and that Rignola did not advise the town that the fines had been paid and that a satisfaction of judgment should be signed.

The satisfactions of judgment were signed on December 20, 2016; Assistant Town Attorney Deirdre Cicciaro signed it on the Town of Brookhaven's behalf. As a result, the Corporate Plaintiffs were unable to sell the 43 Pinedale Avenue property, or any of the Properties, for a period of ten months.

## B. THE RELEVANT PROCEDURAL HISTORY

On or about January 6, 2017, the Plaintiffs filed the above-mentioned complaint in the Supreme Court of the State of New York, Suffolk County. The Defendants subsequently filed a notice of removal on June 7, 2017 removing the instant case to this Court. In response to a motion to compel, the Plaintiffs filed their complaint on October 6, 2017.

On November 17, 2017, the Defendants moved under Rule 12(b)(6) to dismiss the complaint, contending that the Plaintiffs' allegations, even if taken as true, fail to plausibly state claims upon which relief can be granted. The motion was fully briefed as of January 23, 2018.

## II. DISCUSSION

### A. STANDARD OF REVIEW: FED. R. CIV. P. 12(B)(6)

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiffs. *See, e.g.*, *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Elec., Inc. v. City of N.Y.*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free Sch. Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the *Twombly* standard, the Court may only dismiss a complaint if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The Second Circuit has expounded that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009)).

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to survive a motion to dismiss. FED. R. CIV. P. 8(a)(2). Under Rule 8, a complaint is not required to allege "detailed factual allegations." *Kendall v. Caliber Home Loans, Inc.*, 198 F. Supp. 3d 168, 170 (E.D.N.Y. 2016) (quoting *Twombly*, 550 U.S. at 555). "In ruling on a motion pursuant to FED. R. CIV. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)). The Court "[is] not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

## B. CONSIDERATION OF MATERIALS OUTSIDE THE COMPLAINT

The Defendants attach a copy of selected provisions of the Town of Brookhaven Town Code. *See* Declaration of Kenneth E. Pitcoff, Docket Entry ("DE") 12-2. As a preliminary matter, the Court must first address whether these materials may be properly considered by the Court for the purposes of adjudicating this motion.

"[F]ederal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion." *Giugliano v. F3² Capital Partners, LLC,* No. 14-cv-7240, 2015 WL 5124796 (E.D.N.Y. Sept. 1, 2015) (Spatt, J.) (internal citation and quotation marks omitted); *accord Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011) (noting the Second Circuit has recognized "exceptions to Rule 12(b)(6)'s general prohibition against considering materials outside the four corners of the complaint"). In adjudicating this motion, the Court is permitted to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information

> contained in [the] defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Envtl. Servs. v. Recycle Green Servs.*, 7 F. Supp. 3d 260, 270 (E.D.N.Y. 2014) (Spatt, J.) (quoting *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003), *aff'd in part and vacated in part on other grounds sub nom. Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005), *vacated on other grounds*, 547 U.S. 71, 126 S. Ct. 1503, 164 L. Ed. 2d 179 (2006)); *accord Healthnow New York, Inc. v. Catholic Health Sys., Inc.*, No. 14-cv-986S, 2015 WL 5673123 (W.D.N.Y. Sept. 25, 2015); *Oberstein v. SunPower Corp.*, No. 07-cv-1155, 2010 WL 1705868, at *3 (E.D.N.Y. April 28, 2010).

Pursuant to FED. R. EVID. 201(b)(2), "the court may judicially notice a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The Town of Brookhaven's Town Code falls squarely in the purview of FED. R. EVID. 201(b)(2) and as such, may be properly considered by the Court on a motion to dismiss. *See, e.g.*, *Mamakos v. Town of Huntington*, No. 16-CV-5775, 2017 WL 2861719, at *8 (E.D.N.Y. July 5, 2017) (taking judicial notice of Huntington Town Code), *aff'd*, 715 F. App'x 77 (2d Cir. 2018); *Norton v. Town of Islip*, 97 F. Supp. 3d 241, 253 (E.D.N.Y. 2015) (taking judicial notice of Islip Town Code) *aff'd*, 678 F. App'x 17 (2d Cir. 2017); *Missere v. Gross*, 826 F. Supp. 2d 542, 553 (S.D.N.Y. 2011) (taking judicial notice of Cornwall-on-Hudson zoning code); *Casciani v. Nesbitt*, 659 F. Supp. 2d 427, 451 n.11 (W.D.N.Y. 2009) (taking judicial notice of Webster Town Code), *aff'd*, 392 F. App'x 887 (2d Cir. 2010); *Nelson v. City of Rochester*, 492 F. Supp. 2d 282, 284 n.1 (W.D.N.Y. 2007) (taking judicial notice of the City of Rochester's Municipal Code). The Court therefore takes judicial notice of the relevant portions of the Town

of Brookhaven's Town Code and will consider the relevant parts of it for the purposes of adjudicating this motion.

## C. PROSECUTORIAL IMMUNITY

The Defendants argue that Moran and Rignola are entitled to prosecutorial immunity because the Plaintiffs seek to hold them personally liable for actions taken in prosecuting the underlying state action. The Plaintiffs contend that the Defendants were not acting in their roles as advocates but in their capacity as administrators. The Court finds that Moran is entitled to prosecutorial immunity with respect to the § 1983 claim.

In the Second Circuit, "[s]tate prosecutors are entitled to absolute immunity for [] conduct 'intimately associated with the judicial phase of the criminal process.'" *Hill v. City of N.Y.*, 45 F.3d 653, 660-61 (2d Cir. 1995) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976)); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

To determine whether a government official is immune from suit, "the courts are to apply a 'functional approach,' examining 'the nature of the function performed, not the identity of the actor or who performed it.'" *Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993)). A government employee that is responsible for the filing of a criminal complaint is entitled to absolute immunity, *see Imbler*, 424 U.S. at 431, while the investigative functions typically performed by police officers or other law enforcement officers are not protected. *See, e.g.*, *Kalina v. Fletcher*, 522 U.S. 118, 129-30, 118 S. Ct. 502, 139 L. Ed. 2d 471 (1997); *Burns v. Reed*, 500 U.S. 478, 493, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991).

Prosecutorial immunity also applies to non-prosecutor government officials "when they are performing 'functions analogous to those of a prosecutor.'" *Cornejo*, 592 F.3d at 127 (quoting

*Butz v. Economou*, 438 U.S. 478, 515, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978)). State and federal government officials who initiated noncriminal proceedings are also entitled to prosecutorial immunity. *Cornejo*, 592 F.3d at 127-28 (citing *Barrett v. United States*, 798 F.2d 565, 572 (2d Cir. 1986)). In *Barrett*, the Second Circuit explained the factors that counseled in favor of granting prosecutorial immunity to such officials, including "[t]he controversial nature of the proceeding, the risk that a losing civil defendant will seek to retaliate by a suit attacking the propriety of the government attorney's conduct, and the existence of alternative safeguard against the attorney's misconduct (e.g., professional disciplinary proceedings, discovery and cross-examination)[.]" *Barrett*, 798 F.2d at 572. State and local attorneys who initiate civil proceedings on behalf of the government are thus entitled to prosecutorial immunity. *See, e.g.*, *Roache v. Att'y Gen.'s Office*, No. 12-CV-1034, 2013 WL 5503151, at *13-14 (N.D.N.Y. Sept. 30, 2013).

Moran, an Assistant Town Attorney, represented the town in the negotiations with the Corporate Plaintiffs which resulted in a court ordered settlement agreement. The Plaintiffs seek to hold him responsible for allegedly delaying the enforcement of the settlement agreement by refusing to sign the satisfaction of judgment. This is analogous to *Pinaud*, where the Second Circuit ruled that prosecutors violated a plaintiff's constitutional rights by improperly seeking to increase bail; making false representations to induce the plaintiff into entering into a plea agreement; breaching the plea agreement; manufacturing a charge; misrepresenting facts to the Bureau of Prisons; and unnecessarily transferring the plaintiff between jails. *Pinaud v. Cty. of Suffolk*, 52 F.3d 1139, 1149 (2d Cir. 1995). While the Court notes that the prosecutors in *Pinaud* were accused of conduct that was significantly more devious and harmful than in the instant case, the Second Circuit made it clear that actions or representations that breach a plea agreement are protected by prosecutorial immunity. *See, id.*

Although the conduct-at-issue involves the alleged violation of a civil settlement agreement rather than a criminal plea agreement, the former conduct is as protected as the latter. The Court's primary consideration in determining the application of absolute immunity is whether the conduct is prosecutorial in nature, regardless of how "unethical, deviant, and violative of the [P]laintiffs' constitutional rights" the conduct may be. *Doe*, 81 F.3d at 1213. As long as the alleged acts were "components of the initiation and presentation of a prosecution," immunity applies. *Pinaud*, 52 F.3d at 1149. Moran's alleged violation of the court ordered settlement agreement is protected by prosecutorial immunity.

Rignola, on the other hand, is not entitled to prosecutorial immunity at this stage of the litigation. The Plaintiffs contend that Rignola "alleged" a series of Town Code violations, which resulted in charges filed by the Town of Brookhaven in the Suffolk County Sixth District Court. These charges ultimately culminated into the $6,000 court-ordered settlement. While the Plaintiffs plead that Rignola "alleged" the violations that led to the charges being filed, the complaint is vague as to who filed the charges on behalf of the Town of Brookhaven. While it would be reasonable to infer that Rignola was involved in the filing of the charges based on the same purported Town Code violations, it is unclear from the face of the complaint. At this point, the Court is unable to determine whether Rignola's role was merely investigative or also prosecutorial. Therefore, the Court declines to dismiss the claims against Rignola at this stage of the litigation based on prosecutorial immunity.

Accordingly, to the extent that the Defendants seek to dismiss the § 1983 claim against the Defendants on the grounds of prosecutorial immunity, the motion is granted with respect to Moran and denied with respect to Rignola.

## D. PERSONAL LIABILITY UNDER § 1983

The Defendants seek the dismissal of the Plaintiffs' § 1983 claim with respect to Rignola, due to his purported lack of personal involvement in the deprivation of the Plaintiffs' constitutional rights. The Plaintiffs contend that Rignola was personally involved, citing the Second Circuit's *Colon* factors. The Court finds that the Plaintiffs failed to allege Rignola's personal involvement.

To establish personal liability under § 1983, a plaintiff "must show by a preponderance of the evidence that the defendant was personally involved—that is, he directly participated—in the alleged constitutional deprivations." *Gronowski v. Spencer*, 424 F.3d 285, 293 (2d Cir. 2005); *Harris v. Westchester Cty. Dep't of Corr.*, No. 06 Civ. 2011, 2008 WL 953616, at *9 (S.D.N.Y. Apr. 3, 2008) (holding that to find one personally liable under § 1983, a defendant must be "personally or directly involved in the violation, that is, that there was 'personal participation by one who ha[d] knowledge of the facts that rendered the conduct illegal.'" (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir.2001))).

The Second Circuit defines direct participation as "intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Gronowski*, 424 F.3d at 302 (quoting *Provost*, 262 F.3d at 155). "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)); *see also Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995) (finding that there is "no *respondeat superior* liability in § 1983 cases").

Personal involvement may be demonstrated using evidence that the defendant: (1) directly participated in the purported violation; (2) failed to remedy the violation after learning about it; (3) created a policy or custom under which the violation occurred; (4) was grossly negligence in supervising the subordinates who caused the condition or event; or (5) exhibited deliberate

indifference by failing to act on information that indicated that the violation was happening. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

In this case, the Plaintiffs have failed to allege that Rignola, a Town Inspector for the Town of Brookhaven, was "personally involved in the alleged constitutional deprivation." The Plaintiffs contend that Rignola "alleged" several town code violations and those violations led to charges filed against the Corporate Plaintiffs by the Town of Brookhaven. Rignola also refused to advise the Town of Brookhaven that "the fines had been paid and that a satisfaction of judgment should be signed." This purportedly violated the "public trust inherent in [his] position." Nothing in the complaint indicates that Rignola was involved in the negotiation or signing of the court ordered agreement.

Rignola's involvement is limited to what amounts to refusing to sign a satisfaction of judgment and advising the town. However, the section of the Town Code that defines the duties and responsibilities of a Town Investigator is noticeably silent regarding satisfactions of judgment in any capacity. There is nothing in the Town Code that permits a Town Inspector to sign a satisfaction of judgment or advise the town that one should be signed by the appropriate parties.

Moreover, the vague allegation that Rignola "alleged" the Town Code violations that formed the basis of the charges that the Town of Brookhaven commenced against the Corporate Plaintiffs cannot constitute "personal involvement" for the purposes of § 1983. The Plaintiffs do not allege that their constitutional rights were violated by Rignola's allegations or the initiation of the complaint in the Suffolk County Sixth District Court. The Plaintiffs § 1983 claim is limited to a Fifth Amendment claim, a First Amendment claim, and an Eighth Amendment claim by "refusing to sign the satisfactions of judgment and refusing to advise the Town to sign the

satisfaction of judgment." Compl. ¶ 42. As Town Inspector, Rignola was not authorized to sign satisfactions of judgment on behalf of the Town of Brookhaven.

Accordingly, to the extent that the Defendants seek to dismiss the § 1983 claims against the Rignola on the grounds of lack of personal involvement, the motion is granted.

## E. AS TO THE MERITS OF THE § 1983 CLAIMS

### 1. First Amendment Retaliation Claim

The Defendants contend that the Plaintiffs fails to establish a First Amendment retaliation claim against the Defendants. The Plaintiffs allege that the Defendants retaliated against them for "speaking out against them over many years because of their constitutional violations." Compl. ¶ 43.

In order to allege a First Amendment retaliation claim under § 1983, a plaintiff must make a *prima facie* case of "retaliation." This is established by alleging that the state's action was "made *in retaliation* for his exercise of the constitutional right of free speech." *Greenwich Citizens Comm., Inc. v. Ctys. of Warren and Washington Indus. Dev. Agency*, 77 F.3d 26, 32 (2d Cir. 1996) (emphasis in original) (citing *Perry v. Sindermann*, 408 U.S. 593, 598, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972)). A claim made by a private citizen, as opposed to a public one, must allege that "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' action effectively chilled the exercise of his First Amendment right." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001); *see also Posr v. Court Officer Shield #207*, 180 F.3d 409, 418 (2d Cir. 1999); *Estate of Morris v. Dapolito*, 297 F. Supp. 2d 680, 692 (S.D.N.Y. 2004).

"[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983), *overruled*

*on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (same); *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 195 (2d Cir. 1994) ("a bald and uncorroborated allegation of retaliation might prove inadequate to withstand a motion to dismiss").

Here, the complaint purports to allege that the Defendants retaliated against the Plaintiffs due to Augusto Fernandes's decision to "speak[] out against [the Defendants] over many years because of their constitutional violations." Compl. ¶ 43. The Plaintiffs fail to allege anything more than conclusory allegations that the Defendants retaliated against them for speaking out "over many years." There are no details regarding any purported "constitutional violations" that took place over the years that would cause Augusto Fernandes to speak out nor is there any information about the speech itself. The Plaintiffs fail to sufficiently allege that the protected speech motivated the adverse conduct or that there was a chilling effect on the Plaintiffs' exercise of free speech. Therefore, even in the light most favorable to the Plaintiffs and drawing all inferences in their favor, the First Amendment retaliation claims are merely conclusory.

The Plaintiffs separately fail to allege that there was a chilling effect on the exercise of free speech. One of the elements of a § 1983 claim, including a claim of First Amendment retaliation is that "some official action has caused the plaintiff to be deprived of his or her constitutional rights–in other words, there is an injury requirement to state the claim." *Williams v. Town of Greenburgh*, 535 F.3d 71, 78 (2d Cir. 2008) (quoting *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002)). "[P]laintiffs who allege a violation of their right to free speech must prove that official conduct actually deprived them of that right." *Williams*, 535 F.3d at 78 (citing *Colombo*, 310 F.3d at 117). "Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Curley*, 268 F.3d at 73.

13

A failure to allege that a plaintiff's First Amendment rights were "actually chilled," is fatal to a plaintiff's First Amendment retaliation claim. *Balaber–Strauss v. Town/Vill. of Harrison*, 405 F. Supp. 2d 427, 433 (S.D.N.Y. 2005); *see also Laird v. Tatum*, 408 U.S. 1, 13-14, 92 S. Ct. 2318, 33 L. Ed. 2d 154 (1972)); *Jones v. Maples*, No. 98 Civ. 7132, 2002 WL 287752, at *8 (S.D.N.Y. Feb. 26, 2002) ("a complaint which alleges only conclusory and speculative chilling of First Amendment rights should be dismissed." (citing *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992))).

In the instant case, the complaint is devoid of any allegations that this Court can construe as a chilling effect on the Plaintiffs' speech. The Plaintiffs allege that Augusto Fernandes spoke out against the Defendants, but never allege that Mr. Fernandes ceased to do so at any point. The allegation that the Defendants took action to retaliate against Mr. Fernandes for his speech still leaves an open question: did it work? Nowhere in the complaint does it allege that Mr. Fernandes stopped speaking out against the Defendants. Simply asserting, in a conclusory fashion, that the Defendants *intended* to chill the Plaintiffs' speech is insufficient. Without allegations "of even one example of a situation in which [Mr. Fernandes] desired to exercise [his] First Amendment rights but was chilled by defendants' alleged actions…[the Plaintiffs'] First Amendment retaliation claim must be dismissed." *Mangano v. Cambariere*, No. 04 Civ. 4980, 2007 WL 2846418, at *2 (S.D.N.Y. Sept. 27, 2007).

The Plaintiffs' briefing papers shed no additional light on the matter. *See* DE 15 at 4-5. On the contrary, the Plaintiffs' claim in their memorandum of law that to state a claim, "a plaintiff must allege that the defendant engaged in actions that were designed to chill his or her First Amendment rights." *Id*. at 4 (internal citations omitted). While that may be true, it is an incomplete recitation of the proper First Amendment retaliation standard, as accurately outlined

above. The Plaintiffs' failure to address this element of the claim in their complaint or briefing papers is fatal to their claim. *See, e.g.*, *Kuck v. Danher*, 600 F.3d 159, 168 (2d Cir. 2010) (upholding dismissal of First Amendment retaliation claim where "nothing in the complaint suggests that [plaintiff]'s speech was 'actually chilled'"); *Rosendale v. Brusie*, No. 07-CV-8149, 2009 WL 778418, at *11 (S.D.N.Y. Mar. 25, 2009) ("Because the Complaint shows that Plaintiff continued to exercise his First Amendment rights despite Defendants' alleged retaliatory conduct, Plaintiff fails to allege actual chilling of his speech."), *aff'd*, 374 F. App'x 195 (2d Cir. 2010); *Sloup v. Loeffler*, No. 05-CV-1766, 2008 WL 3978208, at *22 (E.D.N.Y. Aug. 21, 2008) ("[The plaintiff] does not refer to any evidence that his speech was actually chilled. … [T]he Court has determined that [the plaintiff's] First Amendment claim fails as a matter of law[.]"); *Ford v. Reynolds*, 326 F. Supp. 2d 392, 403 (E.D.N.Y. 2004) ("Because Plaintiffs have failed to allege any actual chill or deterrence, this Court must conclude that [the plaintiffs] did not suffer the harm necessary to support their retaliation claim.").

Accordingly, the Plaintiffs' First Amendment retaliation claim is dismissed.

## 2. Takings Claim

The Takings Clause of the Fifth Amendment states that no "private property [shall] be taken for public use, without just compensation." U.S. CONST. amend. V. The Fifth Amendment is applicable to the states through the Fourteenth Amendment. *Webb's Fabulous Pharmacies, Inc., v. Beckwith*, 449 U.S. 155, 160, 101 S. Ct. 446, 66 L. Ed. 2d 358 (1980). It is "designed to bar [the] Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Penn Cent. Transp. Co. v. City of N.Y.*, 438 U.S. 104, 123-24, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978) (quoting *Armstrong v. United States*, 364 U.S. 40, 49, 80 S. Ct. 1563, 4 L. Ed. 2d 1554 (1960)).

"To state a takings claim under section 1983, a plaintiff must show (1) a property interest; (2) that has been taken under the color of state law; (3) without just compensation." *Econ. Opportunity Comm'n of Nassau Cty. v. Cty. of Nassau, Inc.*, 47 F. Supp. 2d 353, 368 (E.D.N.Y. 1999) (Spatt, J.) (citing *Frooks v. Town of Cortlandt*, 997 F. Supp. 438, 452 (S.D.N.Y. 1998)); *HBP Assocs. v. Marsh*, 893 F. Supp. 271, 277 (S.D.N.Y. 1995) (same). "The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985).

The Fifth Amendment protects against two types of takings: physical and regulatory. *See Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 324-25, 122 S. Ct. 1465, 152 L. Ed. 2d 517 (2002); *Meriden Trust & Safe Deposit Co. v. FDIC*, 62 F.3d 449, 454 (2d Cir. 1995). A physical taking occurs when the government takes physical possession of a property interest. *See Tahoe–Sierra Pres. Council, Inc.*, 535 U.S. at 324-25. A regulatory taking arises when "state regulation goes too far and in essence 'effects a taking.'" *Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362, 374 (2d Cir. 2006) (quoting *Meriden Trust & Safe Deposit Co.*, 62 F.3d at 454). The Plaintiffs have not specified the type of taking they are alleging in the complaint.

If a taking occurred, which the Court will assume for the purposes of this motion, it could only be characterized as a regulatory one, as the allegations "do[ ] not present the 'classic taking' in which the government directly appropriates private property for its own use." *See Buffalo Teachers Fed'n*, 464 F.3d at 365 (quoting *Eastern Enters. v. Apfel*, 524 U.S. 498, 522, 118 S. Ct. 2131, 141 L. Ed. 2d 451 (1998)). In determining whether a state's action constitutes a regulatory taking, courts consider three factors: "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations;

and (3) the character of the governmental action." *Id.* at 375 (internal citations omitted); *accord Cablevision Sys. Corp. v. F.C.C.*, 570 F.3d 83, 98-99 (2d Cir. 2009).

The Court construes the complaint as an allegation of a regulatory taking by, in essence, denying the Plaintiffs the ability to sell the Properties, thereby leaving the property "economically idle." *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992); *see also Sadowsky v. New York*, 732 F.2d 312, 317 (2d Cir. 1984) ("it is clear that prohibition of the most profitable or beneficial use of a property will not necessitate a finding that a taking that occurred").

In order to successfully allege a Takings claim, "the plaintiffs must allege that they exhausted state procedures for obtaining just compensation." *Econ. Opportunity Comm'n of Nassau Cty.*, 47 F. Supp. 2d at 368 (quoting *Williamson Cty.*, 473 U.S. at 195). This is an issue of ripeness, a jurisdictional inquiry that prevents the Court from prematurely adjudicating untimely disagreements. *Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803, 807-08, 123 S. Ct. 2026, 2030, 155 L. Ed. 2d 1017 (2003) ("Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" (quoting *Abbot Labs v. Gardner*, 387 U.S. 136, 148-49, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967))); *Island Park, LLC v. CSX Transp.*, 559 F.3d 96, 110 (2d Cir. 2009); *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 247 (2d Cir. 2005); *New York Pub. Interest Research Grp. v. Whitman*, 321 F.3d 316, 326 (2d Cir. 2003); *Kittay v. Giuliani*, 112 F. Supp. 2d 342, 348 (S.D.N.Y. 2000) (holding that under Article III, in order for claims to be justiciable, "courts have long recognized that the controversy, as an initial matter, must be ripe (citing *Marchi*

*v. Bd. of Coop. Educ. Servs.*, 173 F.3d 469, 478 (2d Cir. 1999))), *aff'd*, 252 F.3d 645 (2d Cir. 2001).

It is a "constitutional prerequisite to the exercise of jurisdiction" by this Court. *Nutritional Health*

*All. v. Shalala*, 144 F.3d 220, 225 (2d Cir. 1998). The Court "must presume that [it] cannot

entertain [a plaintiff's] claims 'unless the contrary appears affirmatively from the record.'"

*Murphy*, 402 F.3d at 347 (quoting *Renne v. Geary*, 501 U.S. 312, 316, 111 S. Ct. 2331, 115 L. Ed.

2d 288 (1991)).

The Supreme Court ruled in *Williamson County* that where "a State provides an adequate

procedure for seeking just compensation, the property owner cannot claim a violation of the Just

Compensation Clause until it has used the procedure and been denied just compensation."

*Williamson Cty.*, 473 U.S. at 195; *see also Horne v. Dep't of Agric.*, 569 U.S. 513, 525-26, 133 S.

Ct. 2053, 186 L. Ed. 2d 69 (2013) ("[A] Fifth Amendment claim is premature until it is clear that

the Government has both taken property *and* denied just compensation.") (emphasis in original).

The *Williamson County* Court laid out a two-part ripeness test where the plaintiff must "show that

(1) the state regulatory entity has rendered a 'final decision' on the matter, and (2) the plaintiff has

sought just compensation by means of an available state procedure." *Kurtz v. Verizon New York,*

*Inc.*, 758 F.3d 506, 511-12 (2d Cir. 2014) (quoting *Dougherty v. Town of N. Hempstead Bd. Of*

*Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)). This test applies to both physical and regulatory

takings. *See Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 380 (2d Cir. 1995) ("*Williamson*

[*County*] drew no distinction between physical and regulatory takings, and the rationale of that

case … demonstrates that any such distinction would be unjustified.").

The Plaintiffs needed to "first seek compensation from the state if the state has a reasonable,

certain and adequate provision for obtaining compensation." *Econ. Opportunity Comm'n of*

*Nassau Cty.*, 47 F. Supp. 2d at 368. New York State has numerous remedies for just compensation

claims which satisfy all the necessary constitutional requirements. *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 881 (2d Cir. 1996) (stating that Article 78 proceedings satisfy constitutional requirements); *Frooks*, 997 F. Supp. at 452 (noting that N.Y. E.D.P.L. is a satisfactory remedy under the constitution).

If a complaint fails to allege that compensation was denied after following the appropriate state procedures, such a claim cannot withstand a motion to dismiss. *New Holland Vill. Condo. v. DeStaso Enters. Ltd.*, 139 F. Supp. 2d 499, 504 (S.D.N.Y. 2001) ("[T]o withstand a motion to dismiss, an aggrieved plaintiff must allege, not only a taking, but that compensation was sought via state procedures and was denied." (citing *Williamson Cty.*, 471 U.S. at 195)), *aff'd sub nom.*, *New Holland Vill. v. Destaso Enters. Ltd.*, 29 F. App'x 760 (2d Cir. 2002). "Courts within the Second Circuit have uniformly dismissed Fifth Amendment takings claims at the pleadings stage when plaintiffs fail to sufficiently allege that they have availed themselves of such state procedures." *Viteritti v. Inc. Vill. of Bayville*, 831 F. Supp. 2d 583, 591 (E.D.N.Y. 2011) (citing *Vandor, Inc. v. Militello*, 301 F.3d 37, 38-39 (2d Cir. 2002)).

In this action, the Plaintiffs have not alleged exhaustion of the available New York State remedies that may have provided just compensation. In fact, the Plaintiffs have failed to plead that *any* efforts were made to obtain compensation by any potential New York State remedy. As such, the Plaintiffs failed to follow the proper procedures to obtain just compensation for the alleged taking.

Accordingly, the Plaintiffs' Takings claim is dismissed.

### 3. Remaining Federal Claims

The Plaintiffs' complaint contains sparse references to two remaining federal claims: (1) an Eighth Amendment Cruel & Unusual Punishment claim under § 1983; and (2) a § 1985 claim.

Neither claim is addressed in the parties' briefs. As set forth below, both can be disposed of precipitously.

The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. "[T]he Cruel and Unusual Punishments Clause circumscribes the criminal process in three ways: First, it limits the kinds of punishment that can be imposed on those convicted of crimes ...; second, it proscribes punishment grossly disproportionate to the severity of the crime ...; and third, it imposes substantive limits on what can be made criminal and punished as such. ... We have recognized the last limitation as one to be applied sparingly. 'The primary purpose of the Cruel and Unusual Punishments Clause has always been considered, and properly so, to be directed at the method or kind of punishment imposed for the violation of criminal statutes[.]" *Ingraham v. Wright*, 430 U.S. 651, 667, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977) (quoting *Powell v. Texas*, 392 U.S. 514, 531-32, 88 S. Ct. 2145, 20 L. Ed. 2d 1254 (1968)). In order for the cruel and unusual punishments clause to be pertinent, the state must have previously made a formal adjudication of a plaintiff's guilt. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.17, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979).

The complaint has failed to allege that there has been a formal adjudication of guilt as to any of the Plaintiffs and what actions occurred at any point that constitute cruel and unusual punishment. Consequently, the Plaintiffs' Eighth Amendment cruel and unusual punishment claim is dismissed.

The final federal cause of action referred to in the complaint is 42 U.S.C. § 1985. "In order to establish a cause of action under 42 U.S.C. § 1985, a plaintiff must show that a defendant conspired with another person to deprive the plaintiff, or a class of which plaintiff was a member, of equal protection of the laws or of equal privileges and immunities under the law." *Koch v.*

*Mizra*, 869 F. Supp. 1031, 1038 (W.D.N.Y. 1994) (citing *Sorlucco v. New York City Police Dep't*, 888 F.2d 4, 8 (2d Cir. 1989)). In order to survive a motion to dismiss, a complaint must allege that the conspiring defendants "sought, with discriminatory intent, to deprive the plaintiff of a right covered by the Constitution or other laws." *Id.* (citing *Spencer v. Casavilla*, 903 F.2d 171, 174 (2d Cir. 1990)).

In the case at bar, the Plaintiffs' vague references to § 1985 are limited to conclusory allegations of a conspiracy. *See* DE 10. This bare bones pleading fails to allege the requisite discriminatory intent. The complaint's allegation that "Defendants Mr. Moran and Mr. Rignola took their actions and inaction with the malicious intention to cause deprivations of constitutional rights and other injury to the plaintiffs[,]" DE 10 ¶ 48, is "couched in terms of conclusory allegations and fail[s] to demonstrate 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action' as required by § 1985[.]" *Temple of the Lost Sheep, Inc. v. Abrams*, 930 F.2d 178, 185 (2d Cir. 1991) (quoting *New York Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1358 (2d Cir. 1989)).

As such, the Plaintiffs' § 1985 claim is dismissed.

## F. AS TO THE STATE LAW CLAIMS

In *United Mine Workers v. Gibbs*, the Supreme Court noted that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966). As this Court has determined that the Plaintiffs have failed to state a claim for their federal claims, the Court declines to exercise supplemental jurisdiction over the Plaintiffs' state law claims. See 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which

21

it has original jurisdiction ..."); *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998); *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994); *Castellano v. Bd. of Trs. of Police Officers' Variable Supplements Fund*, 937 F.2d 752, 758 (2d Cir. 1991).

### III.  CONCLUSION

For the foregoing reasons, the Court dismisses the Plaintiffs' §§ 1983 and 1985 claims with prejudice, pursuant to Rule 12(b)(6).  Accordingly, the state law claims are dismissed without prejudice.   The Clerk of the Court is respectfully directed to close the case.


It is **SO ORDERED**:

Dated:  Central Islip, New York

May 7, 2018

___/s/ Arthur D. Spatt__

ARTHUR D. SPATT

United States District Judge